UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

WILFREDO ROSADO,

                Plaintiff,

-against-

CITY OF NEW YORK, CORRECTION OFFICER
DAVID VALDEZ, shield No. 11712, CORRECTION
OFFICER G. ALTSCHULER, Shield No. 1265, CAPTAIN
J. GONZALEZ, Shield No. 842, CORRECTION OFFICER
K. HALL, Shield No. 11816, CORRECTION OFFICER F.
CAMMARATA, Shield No. 40002,

                Defendants.

------------------------------------------------------------------------ x

**DECLARATION OF
ILISSA BROWNSTEIN, ESQ.**

11 CV 4285 (SAS)(GWG)

      **ILISSA BROWNSTEIN, ESQ.** an attorney duly admitted to practice in the State of New York and the Southern District of New York, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following statement is true and correct:

      1. I am a member of the bar of this Court and the attorney representing the plaintiff in the above referenced case. As such, I am familiar with the facts and circumstances of this action. I make this declaration in support of plaintiff's application for an award of attorney's fees and costs (the "Fee Application"), pursuant to Rule 68 of the Federal Rules of Civil Procedure ("Rule 68"), upon the offer of judgment accepted by plaintiff on November 4, 2011. (See Docket Entry No. 11). This declaration is based on my personal knowledge and a review of documents related to this action.

      2. A plaintiff that accepts a Rule 68 Offer of Judgment is entitled to costs and fees by virtue of the Rule 68 itself and the express language of the judgment. As such, the only

issue to be decided in this motion is the number of hours to be compensated and the "reasonable" rates of compensation for those hours.

3. Counsel for defendants objected to the amount of fees requested by plaintiff. Therefore, Counsel for plaintiff attempted to negotiate a settlement with the City regarding the attorney's fees. The negotiation, however, was unsuccessful, as the City was unwilling to identify an hourly rate it thought was reasonable and refused to identify specific entries in Counsel's billing records that were excessive.

4. Upon acceptance of the Rule 68 on November 4, 2011, plaintiff expeditiously produced itemized time records to the defendants on November 7, 2011. Thereafter, Counsel for the City spoke to plaintiff's counsel and verbally communicated general objections regarding the time records, including that the hourly billing rate was high and the hours billed were excessive. However, despite numerous requests by plaintiff's counsel, counsel for the City failed to identify which entries in the time records were excessive and what hourly rate the fees should be billed at. Instead, a month later, on December 7, 2011, the City responded in writing and made a settlement offer that was, in essence, a 75% reduction of plaintiff's attorney's fees. Notably, the City's letter failed to identify each entry that it was contested. Instead, the City's letter contained general objections, little numerical analysis, and little caselaw to support its position. Further, the letter did not appear to leave open the possibility of further negotiations. Rather, it directed the plaintiff to notify the City whether plaintiff would accept the offer within two (2) days. Since the City's offer was a 75% reduction of plaintiff's fees, plaintiff rejected the offer.

5. Nevertheless, on December 29, 2011, in a good faith effort to once again attempt to settle attorney's fees prior to the Fee Application, plaintiff submitted a reasonable second settlement proposal. In this settlement proposal, plaintiff reduced attorney's fees by

approximately 25%, including a reduction of the hourly rate from $400 to $350, as well as an approximately 15% reduction in total hours. The attorney's fees submitted with this Fee Application reflect those adjusted amounts and plaintiff seeks the adjusted total in this Fee Application. Thereafter, on January 4, 2012, the City responded and increased its initial settlement offer by a very small value. However, the offer was still, in essence, a 70% reduction of plaintiff's original attorney's fees and the City refused to tell plaintiff how it reached the value it was offering. Based upon the City's unwarranted 70% percent reduction of plaintiff's attorney's fees, plaintiff is now forced to file this Fee Application.

6. The Fee Application covers the time period up to date of the Rule 68 Offer of Judgment in late October 2011, and will also seek reimbursement for the work in preparing the Fee Application, through when Plaintiff's Reply Brief is due to this Court. As mentioned above, plaintiff has exercised conservative billing judgment in this case and has already reduced attorney's fees by 25%, including a self-imposed reduction of the hourly rate from $400 to $350.

## FACTS RELEVANT TO THE FEE APPLICATION

7. Plaintiff filed this civil rights case on June 24, 2011[1], which alleged that plaintiff's Eighth and Fourteenth Amendment Rights were violated by the defendants. (See Docket Entry No. 1 and See Amended Complaint ("Am. Compl.") at ¶¶ 25-28). Specifically, plaintiff alleged that on September 19, 2010, the defendant correction officers brutally beat plaintiff and used excessive force against plaintiff while he was being admitted into the Manhattan Detention Complex ("MDC"). (Id. at ¶ 1). As a result of the beating, plaintiff sustained serious injuries to his head, face, eye, back, shoulder, ribs, and wrists. (Id. at ¶ 2).

---

[1] On September 7, 2011, plaintiff filed an Amended Complaint.

Additionally, plaintiff alleged that defendant City's deliberate indifference in screening, hiring, training, disciplining, and retaining the individual defendants proximately caused each of plaintiff's injuries. (Id. at ¶ 36). Notably, the Department of Correction has a long standing history of their employees using excessive force against inmates and abusing their position of power. (See Ingles v. City of New York, No. 01 Civ. 8279 (DC), 2003 U.S. Dist. LEXIS 2453 (S.D.N.Y. Feb. 20, 2003).

8. Specifically, on or about September 19, 2011, plaintiff was processed and admitted into the Manhattan Detention Complex, a New York City Department of Corrections facility. The correction officers assigned to process plaintiff into the facility recognized plaintiff from his prior stays at the facility, and verbally bullied plaintiff about the fact that plaintiff was returning to the facility. In response, plaintiff verbally teased the officers about a variety of issues, including the fact that one of the officers was overweight. The correction officers became very angry about the fact that plaintiff "spoke back to them."

9. Thereafter, defendant Captain Gonzalez ordered the defendant correction officers to rear handcuff plaintiff, and transport him alone to the medical clinic so that he could take a physical and be processed into the facility. The defendant correction officers rear handcuffed plaintiff, transported plaintiff to a location within the facility that lacked video cameras, and began to brutally assault plaintiff. Besides verbally teasing the officers, plaintiff did nothing to provoke the defendant correction officers. Specifically, the defendant correction officers punched and slapped plaintiff in the eye and face, threw plaintiff to the ground, and kicked plaintiff all over his body, including his head, back, and torso. The defendant correction officers pepper sprayed plaintiff. Plaintiff was bleeding from his eye and his shirt was covered in blood.

10. Plaintiff was rear handcuffed during the entire assault. At no time prior to, or during the assault, did plaintiff make any aggressive gesture toward the defendant correction officers or present any risk of physical harm to the officers. The defendant correction officers stopped beating plaintiff when non-party Captain Garell arrived at the scene. Captain Garell appeared disturbed by what she observed when she arrived at the scene of the incident, and had photographs taken of plaintiff's injuries. Thereafter, plaintiff was prevented from entering the general population and remained in isolation for the duration of his stay at the Manhattan Detention Complex. Plaintiff suffered non-permanent injuries to his eye, which was swollen and bled profusely as a result of the officers' actions. Additionally, plaintiff's shoulder, back, head, wrists, and torso were all injured as a result of this incident.

11. Prior to filing of the complaint, plaintiff's counsel conducted factual and legal research to ensure the claims were viable and brought in good faith in accordance with Rule 11 of the Federal Rules of Civil Procedure. Counsel met with plaintiff, researched similar cases in which a plaintiff's civil rights were violated, and developed viable legal theories and claims for this case.

12. Since filing the Complaint, counsel's efforts to zealously represent plaintiff continued throughout the entire course of the litigation. Specifically, plaintiff's counsel conducted significant document discovery, reviewed numerous documents produced by defendants, drafted two sets of discovery demands, including discovery demands for electronic discovery, and responded to defendants' discovery demands. As a result of defendants' numerous deficient discovery responses, plaintiff was also forced to address and litigate those deficiencies with the defendants.

13. Furthermore, plaintiff's counsel attended the initial conference in this case, as well as a settlement conference in this case. Counsel for plaintiff prepared for the settlement conference. Reasonable preparation included meeting with plaintiff (who was required to attend the conference with Judge Gorenstein), drafting a detailed pre-settlement conference letter in accordance with Judge Gorenstein's rules for settlement conferences, and attending the settlement conference with plaintiff. Notably, at the settlement conference, Magistrate Judge Gorenstein credited plaintiff's version of events, and commented that based upon the information presented by Counsel for plaintiff, the evidence is consistent with plaintiff's version of events. Throughout the course of the litigation, plaintiff's counsel has worked efficiently and economically to obtain the best possible outcome for plaintiff in this case.

14. Further, as result of the zealous representation by counsel in this case, many of plaintiff's allegations against the defendant officers were corroborated by the evidence uncovered during the course of the litigation. Additionally, in light of the objective credible evidence, the defendants' version of events appeared to be fabricated.

15. First, the defendant officers' version of events was inconsistent with the normal policies and procedures used by officers when transporting prisoners from the intake area to the medical clinic. Upon and information and belief, inmates are transported to the clinic for their physicals in groups of approximately ten inmates. Further, inmates are required to be rear handcuffed while they are being transported to the clinic. As an initial matter, it is curious that plaintiff was transported alone to the clinic by the defendant officers, instead of transporting him to the clinic with the other inmates, who were being processed through intake at the time. This departure from normal practice is indicative of the fact that the defendant officers wanted to be alone with plaintiff so that there would be no witnesses when they brutally assaulted him.

Moreover, it is suspect that the incident occurred in one of the few areas in the Manhattan Detention Facility that is not monitored by video cameras.

16. Second, defendants alleged that plaintiff was not handcuffed at the time of the incident, and punched the officers with a closed fist. However, defendants allegations were found to be contrary to the evidence in this case. Plaintiff's version of events is credible, as it is consistent with DOC prisoner transport policies. Plaintiff alleged that the defendant officers followed DOC policy and rear handcuffed him before they transported him to the clinic. Because plaintiff was rear handcuffed, it would have been impossible for him to punch the defendant correction officer on the side of the head with a closed fist, as alleged by the defendant correction officers. The defendant correction officers' version of events that they decided to transport plaintiff without handcuffs, against DOC policy, lacks credibility. The officers provide no explanation for why plaintiff was allegedly transported, according to them, without handcuffs.

17. Third, plaintiff's allegations that he was brutally assaulted by the correction officers while he was handcuffed, is supported by his medical records regarding the injuries to his wrists. Specifically, plaintiff's medical records indicate that he suffered from abrasions to his wrists as a result of the incident. (See Ex. "4"). The injuries to plaintiff's wrists were caused because plaintiff was beaten and thrown to the floor in a violent manner while he was already handcuffed. The pressure from the handcuffs against plaintiff's wrists while he was being thrown around by the officers caused the abrasions to plaintiff's wrists. If plaintiff had not been handcuffed during the incident, as claimed by the officers, then there would be no injuries to his wrists from handcuffs. The medical records provide objective evidence that the defendant correction officers were lying about whether plaintiff was handcuffed during the incident. Based

7

upon this overwhelming evidence, it is clear that the correction officers fabricated their version of events to justify why they punched and brutally assaulted plaintiff.

18. Finally, defendants failed to provide any documentation that the correction officers suffered injuries requiring medical attention as a result of the incident. Presumably, if plaintiff actually punched defendant in the side of the head with a closed fist, he would have suffered injuries to his head that would have required medical treatment.

19. It should noted that the Department of Correction conducted their own investigation into this incident and the documents reflect that the Department of Correction recommended disciplinary action for the defendant correction officers involved in this incident. Specifically, the Department of Correction recommended that Captain Gonzalez be charged with using unnecessary force, and recommended that the four (4) individual defendant correction officers be charged with observing the use of force and failing to file a report. In fact, based upon the Department of Correction documents in this case, some of the defendants' unlawful actions were documented on videotape. (See Ex. "5" and Ex. "6"). Notably, plaintiff was never provided with a copy of the videotape in this case.

20. On October 21, 2011, the City made a Rule 68 Offer of Judgment to plaintiff in the amount of $2,001.00. On November 4, 2011, plaintiff accepted the Offer of Judgment.

### PLAINTIFF'S ATTORNEY'S FEES AND COSTS

21. Plaintiff seeks a total award of $24,821.25[2] ($24,471.25 (attorney's fees) + $350 (Costs)). Plaintiff is not seeking an award for any fees of paralegals or other staff, or law

---

[2] With respect to fees related to the preparation of Plaintiff's Fee Application, this Fee Application does not include those accrued fees. Plaintiff intends to submit attorney's fees related to the preparation of Plaintiff's Fee Application with the Reply Memorandum of Law in Support of Plaintiff's Application for an Award of Attorney's Fees and Costs.

student interns. Moreover, plaintiff is not seeking any reimbursement for travel time or copying. (See Billing Records annexed to Brownstein Decl. as Ex. "1").

### A. Hours

22. Counsel for plaintiff entered the time spent working on daily litigation in entries in a Microsoft Word spreadsheet. These entries include the date of the activity, the amount of time spent, and a description of the work performed.

23. Plaintiff exercised billing discretion in a number of ways. Specifically, as noted above, plaintiff did not bill for paralegal or law intern time spent on this litigation. Moreover, plaintiff is not seeking recovery of most costs, including travel and copying.

### B. Attorney Rates

24. Plaintiff's counsel submits that the requested hourly rate of $350 per hour is consistent with or lower than what my qualifications and experience would justify. Additionally, plaintiff submits that the hourly rate of $125 for paralegal/administrative activities is consistent with the established case law in the Southern District of New York. Below, plaintiff's counsel summarizes her experience and qualifications, as well as submits a comprehensive list of her extensive litigation experience attached hereto as Exhibit "2" that justify the hourly rate of $350 per hour. Additionally, plaintiff respectfully refers the Court to the Affirmation of Jane Byrialsen, Esq. attached hereto as Exhibit "3," which illustrates that the requested rate of $350 per hour is comparable to what other attorneys with similar practice areas and experience charge as their hourly rate.

25. I graduated from Georgetown University Law School in 2003, and have been practicing law for approximately nine (9) years. My experience in the area of criminal law and civil litigation, including civil rights law is extensive. I began my career working for a boutique

law firm, focused on criminal law. Prior to opening my own practice, I worked for several years in the public sector at the Legal Aid Society, Manhattan Criminal Division. In my capacity as an attorney, I have been trial counsel for clients on numerous cases in both Federal and State Court, and have conducted numerous hearings and trials. (See Ex. "2").

26. Moreover, I have argued cases at the Appellate level. In addition to Civil Rights Litigation and Criminal Law, I also have experience with Anti-trust Law, Bankruptcy Law, and Commercial Law. Additionally, I am a member in good standing of the 18-B panel. I am a member in good standing of the New York State Bar Association, the National Association of Criminal Defense Lawyers, and the New York State Association of Criminal of Criminal Lawyers. I have also been published in the American Criminal Law Review *(Employment-Related Crimes*, 39 Am. Crim. L. Rev. 355 (2002)). (See Ex. "2").

27. Further, the requested hourly rate of $350 per hour is commiserate with what other attorneys that practice civil rights in the SDNY with similar experience to plaintiff's counsel bill their clients. (See Ex. "3") Specifically, Jane Byrialsen, Esq., who also graduated law school in 2003, and is a partner in a small law firm that practices civil rights and criminal law, bills clients at an hourly rate of $400 per hour. (Id.). As such, counsel's request of $350 per hour is reasonable and in line with the prevailing market rates of attorneys practicing civil rights law in the SDNY.

## CONCLUSION

28. For the reasons set forth above and in plaintiff's supporting memorandum of law, plaintiff respectfully requests that the Court award them attorney's fees and costs in the amount of $24,821.25, and set the hourly rate on this case as the rate requested in this motion.

Dated:   New York, New York
         January 9, 2011

                                   Law Offices of Ilissa Brownstein, Esq.
                                   *Attorney for Plaintiff*
                                   22 Cortlandt Street, 16th Floor
                                   New York, New York 10007
                                   (516) 286-5442

By: _____
                                   ILISSA BROWNSTEIN, ESQ.

TO:   **BY ECF AND MAIL**
         Joseph Marutollo, Esq.
         New York City Law Department
         Attorney for Defendants
         100 Church Street
         New York, New York  10007