UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

WILFREDO ROSADO,

          Plaintiff,

- against -

CITY OF NEW YORK, CORRECTION
OFFICER DAVID VALDEZ, Shield No.
11712, CORRECTION OFFICER G.
ALTSCHULER, Shield No. 1265, CAPTAIN
J. GONZALEZ, Shield No. 842,
CORRECTION OFFICER K. HALL, Shield
No. 11816, CORRECTION OFFICER F.
CAMMARATA, Shield No. 40002,

          Defendants.
------------------------------------------------------X

OPINION AND ORDER

11 Civ. 4285 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/15/12

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

       Plaintiff Wilfredo Rosado, represented by Ilissa Brownstein, Esq. ("plaintiff's counsel" or "counsel"), brought suit pursuant to 42 U.S.C. § 1983, alleging that he was the victim of excessive force while incarcerated at the Manhattan Detention Complex ("MDC"). The alleged force was exercised by employees of the New York City Department of Corrections ("DOC"), who were sued in their individual capacities. Plaintiff also brought a *Monell* claim against the City of New York (often referred to as the "City" or "defendant"), alleging

deliberate indifference to the use of excessive force by DOC employees.

On October 21, 2011, the City served a Rule 68 Offer of Judgment on plaintiff in the amount of $2,001.00 "plus reasonable attorneys' fees, expenses and costs to the date of this offer for plaintiff's federal claims."[1] On November 4, 2011, plaintiff accepted the Offer of Judgment thereby "allowing the plaintiff to take judgment against the City of New York for the total sum of Two Thousand and One ($2,001.00) Dollars, plus reasonable attorneys' fees, expenses and costs to the date of this offer."[2] Having accepted the Offer of Judgment, plaintiff now moves for an award of attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 68 ("Rule 68").[3] Specifically, plaintiff seeks $23,971.25 in attorneys' fees and costs for work performed in litigating this matter and an additional

---

[1] 10/21/11 Rule 68 Offer of Judgment.

[2] 11/4/11 Notice of Plaintiff's Acceptance of Offer of Judgment.

[3] Plaintiff's Notice of Motion states that "counsel for plaintiff will seek an award of attorneys' fees and costs pursuant to Rule 68 of the Federal Rules of Civil Procedure, upon the offer of judgment accepted by plaintiff on November 4, 2011." The Rule 68 Offer of Judgment specifically offered plaintiff to take judgment against the City of New York for $2,001.00 "plus reasonable attorneys' fees, expenses and costs to the date of this offer for plaintiff's federal claims." Plaintiff's Notice of Acceptance specifically accepted judgment against the City of New York for $2,001.00 "plus reasonable attorneys' fees, expenses and costs to the date of this offer."

$26,250.00 for work performed in connection with the fee application.[4] For the following reasons, plaintiff's motion is granted but not in the amounts requested.

## II.  BACKGROUND

Plaintiff filed a Complaint on June 24, 2011, naming as defendants the City of New York, Correction Officer Velez, and Correction Officer John Doe #1. On September 7, 2011, plaintiff filed an Amended Complaint which named the City of New York as well as the following individuals: Correction Officer David Valdez, Correction Officer G. Altschuler, Captain J. Gonzalez, Correction Officer K. Hall, and Correction Officer F. Cammarata as defendants (collectively, the "Individual Defendants").[5] Plaintiff alleged that his rights under the Eighth and Fourteenth Amendments were violated by the City and the Individual Defendants. Specifically, plaintiff claimed that on September 19, 2010, while he was being transported within the MDC, several uniformed correction officers beat him and used pepper spray on him. The physical assault by DOC employees allegedly caused plaintiff serious injuries to his head, face, back, shoulder, ribs and wrists, as

---

[4]  *See* 1/30/12 Declaration of Ilissa Brownstein, Esq. ("Brownstein Reply Decl.") ¶¶ 11-12 ("Plaintiff submits that in addition to the fees and costs submitted in connection with litigating the case, plaintiff is also entitled to fees and costs related to the Fee Application.").

[5]  A review of the civil docket sheet for this case indicates that the Individual Defendants were never served.

well as profuse bleeding.

Plaintiff sought two million dollars in damages in the Amended Complaint.  On September 12, 2011, the City offered plaintiff one thousand dollars to settle the case in its entirety.  That offer was rejected.  A magistrate judge held a settlement conference on September 28, 2011.  That conference was also unsuccessful.  On October 17, 2011, the City offered plaintiff three thousand dollars to settle the case, which plaintiff rejected on October 19, 2011.  On October 21, 2011, the City made a Rule 68 Offer of Judgment in the amount of $2,001.00, which plaintiff accepted on November 4, 2011.

On November 7, 2011, plaintiff made a demand of $33,920.00 in attorneys' fees and costs.  This amount was arrived at by multiplying 82.35 hours times $400 per hour ($32,940.00) and adding $350.00 in costs (filing fees).  Less than one month later, on December 4, 2011, the City offered plaintiff eight thousand five hundred dollars in attorneys' fees and costs.  On December 29, 2011, plaintiff lowered his fee demand to $25,197.50, reducing the total number of hours by approximately ten hours (from 82.35 to 72.28 hours) and counsel's hourly rate from $400 per hour to $350 per hour.  Furthermore, the rate for 3.9 hours spent on administrative tasks was lowered to $125 per hour.  On January 4, 2012, the City offered plaintiff ten thousand dollars in attorneys' fees and costs, which was also

rejected. The instant application soon followed.

## III. LEGAL STANDARD

A "prevailing party" in a civil rights action is entitled to an award of attorneys' fees and costs.[6] Furthermore, a prevailing party is also entitled to reimbursement for time reasonably expended in preparing his attorneys' fee application.[7] A "prevailing party" is a party who achieves a "'material alteration of the legal relationship of the parties'. . . ."[8] District courts are afforded considerable discretion in determining the amount of reasonable attorneys' fees in any given case.[9] The methodology to be used in determining those amounts is the "lodestar"

---

[6] *See* 42 U.S.C. § 1988(b) (stating that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in civil rights actions). *See also Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) ("Although a district court typically has wide discretion in choosing whether to deny attorneys' fees, . . . this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust.").

[7] *See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees.").

[8] *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).

[9] *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (stating that district courts' discretion in awarding fees is not "unfettered"); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) ("The district court retains discretion to determine . . . what constitutes a reasonable fee.").

approach. In addition, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[10]

The Supreme Court has endorsed the "lodestar" approach as the superior method to be used in determining attorneys' fees, describing it as "'the guiding light of . . . fee-shifting jurisprudence.'"[11] Disfavoring the *Johnson* approach and its twelve, case-specific factors[12] as being too subjective,[13] the

---

[10] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[11] *Perdue v. Kenny*, 130 S. Ct. 1662, 1672 (2010) (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (internal quotation marks and citation omitted)). In *Perdue*, the issue was whether an attorney's fee award could be increased (enhanced) based on the attorney's superior performance.

[12] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430, n.3.

[13] *See Perdue*, 130 S. Ct. at 1671-72. "This method, however, 'gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.'" *Id.* at 1672 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("*Delaware Valley I*")).

Supreme Court has stated that "there is a 'strong presumption' the lodestar figure is reasonable[.]"[14] In applying *Perdue*, the Second Circuit has stated:

> Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a "presumptively reasonable fee." While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error. A detailed explanation of the lodestar calculation is unnecessary, but compliance with the Supreme Court's directive that fee award calculations be "objective and reviewable," implies the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure.[15]

According to the Supreme Court,

> the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. [Furthermore], the lodestar method is readily administrable; and unlike the *Johnson* approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.[16]

The aim of section 1988 "is to enforce the covered civil rights statutes, not to

---

[14] *Id.* at 1673.

[15] *Millea*, 658 F.3d at 166-67 (citations omitted).

[16] *Perdue*, 130 S. Ct. at 1672 (citations omitted, emphasis in original).

provide 'a form of economic relief to improve the financial lot of attorneys.'"[17] Thus, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."[18] There is a "strong" presumption that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."[19]

"In determining what fee is reasonable, the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"[20] In doing so, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."[21]  "In reducing the 'lodestar' amount, the court may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in

---

[17]     *Id.* at 1673 (quoting *Delaware Valley I*, 478 U.S. at 565).

[18]     *Id.* at 1672 (citing *Delaware Valley I*, 478 U.S. at 565 ("[I]f plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied."); *Blum v. Stenson*, 465 U.S. 886, 897 (1984) ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." (ellipsis, brackets, and internal quotation marks omitted))).

[19]     *Id.* at 1673.

[20]     *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

[21]     *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).

the amount of hours."[22]

There is no rule requiring proportionality between the amount of fees requested and the damages recovered. The Second Circuit has stated:

> While a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely. Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded.[23]

"Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, [courts] have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial

---

[22] *T.S. Haulers, Inc. v. Cardinale*, No. 09 CV 0451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing *Green v. City of New York*, 403 Fed. App'x 626, 630 (2d Cir. 2010) (stating that district courts are authorized "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'") (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (internal quotation marks and citation omitted))).

[23] *Millea*, 658 F.3d at 169 (citation omitted, emphasis in original).

interest at stake in the litigation."[24]

"'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."[25] "Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar."[26] As recognized by the Supreme Court, where

> a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.[27]

---

[24]   *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (citing cases).

[25]   *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

[26]   *Millea*, 658 F.3d at 168.

[27]   *Hensley*, 461 U.S. at 436.

The "degree of success" inquiry "is not limited to inquiring whether a plaintiff prevailed on individual claims."[28] "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved."[29] Accordingly, "a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory."[30]

"The reasonable hourly rate is the rate a paying client would be willing to pay."[31] In determining the reasonable hourly rates to be applied, courts should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[32] "The relevant community to which the court should look is the district in which the case

---

[28] *Barfield*, 537 F.3d at 152.

[29] *Id.* (quotation marks and citation omitted).

[30] *Kassim*, 415 F.3d at 256.

[31] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

[32] *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum*, 465 U.S. at 896, n.11).

was brought."[33] To compensate for the delay in payment, the hourly rates to be used should be "'current rather than historic hourly rates.'"[34] In sum, in determining a reasonable hourly rate, courts "should bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."[35]

## IV. DISCUSSION

### A. Counsel's Hourly Rate

Although plaintiff's counsel's standard rate is $400 per hour, plaintiff voluntarily reduced the requested rate to $350 per hour. Plaintiff argues that $350 per hour for attorney work and $125 per hour for administrative activities are reasonable rates in light of counsel's education, skill and experience. Plaintiff's counsel graduated from Georgetown University Law School in 2003 and has been practicing law for approximately nine years.[36] Counsel states that she has

---

[33] *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d at 232).

[34] *Gierlinger*, 160 F.3d at 882 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)).

[35] *Arbor Hill*, 522 F.3d at 190.

[36] *See* 1/9/12 Declaration of Ilissa Brownstein ("Brownstein Decl.") ¶ 25.

"extensive" experience in criminal law and civil rights litigation.[37]  Counsel lists nineteen federal civil rights cases where she has served as trial counsel.[38]  In further support of the requested hourly rate, counsel has submitted the Affirmation of Jane Byrialsen, Esq., a colleague whose practice also includes federal civil rights litigation.[39]  Plaintiff thus argues that "counsel's request of $350 per hour is reasonable and in line with the prevailing market rates of attorneys practicing civil rights law in the SDNY."[40]

The City objects to counsel's proposed rates as unreasonable, attacking her experience, reputation, ability and skill.  With regard to experience, the City points out that counsel's earliest federal civil rights case was filed on August 20, 2009.[41]  Extrapolating from this, the City argues that plaintiff's counsel has less than three years of federal civil rights experience.  The City further notes that at the time of the filing of the Complaint in this action, plaintiff's counsel had participated in only twelve federal civil rights cases.

---

[37]   *Id.*

[38]   *See id.*, Ex. 2.

[39]   *See id.*, Ex. 3 at 2 ("I have watched several of her trials and can attest that Ms. Brownstein is a skilled trial attorney and litigator.").

[40]   *Id.* ¶ 27.

[41]   *See Shaw v. City of New York*, No. 09 Civ. 7350 (Stein, J.).

The City objects to the Byrialsen Affirmation as "self-serving," pointing out that Byrialsen is only familiar with counsel's work at the Legal Aid Society's Criminal Defense Division. Thus, according to the City, Byrialsen has no knowledge of counsel's civil rights expertise. Moreover, the City notes that Byrialsen's stated hourly rate of $400 per hour is her standard hourly rate in *contingent fee* civil rights cases and that her affirmation does not include a single civil rights case where she was actually awarded $400 per hour.

Lastly, the City calls into question plaintiff's counsel's ability and skill, citing a number of entries in her billing records as support. For example, counsel billed 4.225 hours under the heading "Communication with other counsel re: . . ." The City argues that a reasonable paying client would not wish to pay $350 per hour for his or her attorney to seek advice from other attorneys regarding "basic issues related to litigation."[42] Plaintiff's counsel's alleged lack of skill is further evidenced by the entry on October 17, 2011, in which counsel billed four hours to "Research[] electronic discovery issues as related to defendants' discovery responses containing emails." According to the City, such research would not be required if a more experienced attorney handled the case.

In sum, the City submits that plaintiff's counsel's hourly rate should

---

[42] Defendant City of New York's Memorandum of Law in Opposition to Plaintiff's Counsel's Motion for Attorney's Fees and Costs at 7.

be reduced to $250 per hour. In support thereof, the City cites *Pakter v. New York City Dep't of Educ.*, a case where $175 per hour was deemed to be a reasonable hourly rate for an Assistant Corporation Counsel who had one year of experience since graduating from law school when he first appeared in the action.[43] In reaching this conclusion, the court noted that within the Southern District of New York, "reasonable hourly rates for junior associates vary: (a) $275 for a junior associate at a well-regarded civil-rights law firm; (b) $250 for junior associates at a mid-size law firm specializing in civil rights employment law; (c) $225 for junior associates in their first-year of experience; and (d) $200 to a junior associate who was a first-year attorney during the bulk of the case."[44]

        The fundamental flaw in the City's argument is that plaintiff's counsel is not a junior associate. Whether plaintiff's counsel was involved in nineteen or twelve civil rights cases, she has at least three years experience in the area of civil rights and nine years experience in general litigation. To compare the rates awarded to junior associates is, therefore, erroneous. More on point are the cases cited by plaintiff for the proposition that $350 per hour is a reasonable hourly rate for an attorney with comparable experience. For example, in *Davis v. City of New*

---

[43] *See* No. 08 Civ. 7673, 2010 WL 5653397, at *2 (S.D.N.Y. Oct. 26, 2010).

[44] *Id.* at *3.

*York*, this Court found rates ranging from $350 to $375 per hour to be reasonable for attorneys with nine to eleven years experience.[45] In *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, the court found $350 per hour to be a reasonable rate for an attorney with ten years experience,[46] and in *Rozell v. Ross-Holst*, $350 per hour was found to be a reasonable rate for senior associates.[47] Thus, because plaintiff's counsel is more akin to a senior associate, I find her proposed rate of $350 per hour to be reasonable for her legal work. Her requested hourly rate of $125 per hour rate for administrative/paralegal activities is also reasonable.[48]

---

[45] *See Davis v. City of New York*, No. 10 Civ. 699, 2011 WL 4946243, at *5 (S.D.N.Y. Oct. 18, 2011).

[46] *See* No. 06 Civ. 6198, 2008 WL 1899938, at *4 (S.D.N.Y. Apr. 29, 2008).

[47] *See* 576 F. Supp. 2d 527, 546 (S.D.NY. 2008). The City also cites this case albeit for a different reason, namely, that $250 per hour is a reasonable rate for junior attorneys in a mid-size firm.

[48] *See, e.g., Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558, 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008) (finding "ample support for $150 per hour as a reasonable rate for paralegals in this District"); *Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (awarding 100 hours of paralegal time at $125 per hour).

### B. Total Number of Hours

The City objects to the total number of hours charged by plaintiff's counsel, setting forth various arguments for specific categories of time to which it objected. I agree with the City that the total number of hours charged by plaintiff's counsel is excessive for the tasks performed to resolve this litigation.[49] My review of plaintiff's counsel's billing records revealed that given the relatively limited number of tasks performed by counsel, the total number of hours appeared to be inflated and that a reduction in hours is warranted.

But rather than delve into the minutia of individual time entries as suggested by the City, I will apply an across-the-board percentage reduction of fifteen percent to the total revised amount requested by plaintiff of $23,621.25 ($23,971.25 + $350.00). Thus, the amount of fees awarded for litigating this action is $20,078.06 ($23,621.25 X 85%), to which $350 in costs are added, resulting in a total award of $20,428.06.

### C. Fees Incurred in Fee Application

Plaintiff also seeks fees incurred by counsel in preparing the instant fee application. However, both the Rule 68 Offer of Judgment and plaintiff's

---

[49] *See, e.g.,* Brownstein Decl. ¶¶ 8, 9, 10, 14, 15, 16, 17, 18 & 19 (demonstrating the inclusion of extraneous material and the verbosity of counsel's submissions).

17

Notice of Acceptance specifically limited "reasonable attorneys' fees, expenses and costs *to the date of this offer*."[50] Offers of Judgment pursuant to Rule 68 are "'construed according to ordinary contract principles.'"[51] Arguably, then, plaintiff is precluded from seeking fees incurred after October 21, 2011, the date of the Rule 68 Offer of Judgment, as that is what he agreed to by accepting the Offer of Judgment.[52]

        Nonetheless, as a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application. By not settling the attorneys' fees issue, the City was put on notice that time spent by counsel in seeking fees would become a component of "reasonable attorney's fees." However, plaintiff's request for seventy-five hours to prepare a fee application in this straightforward case is exorbitant. All of the tasks completed by counsel in the instant fee application could have been streamlined and completed in

---

[50] Rule 68 Offer of Judgment; Notice of Plaintiff's Acceptance of Offer of Judgment (Docket Entry # 11) (emphasis added).

[51] *Jolly v. Coughlin*, No. 92 Civ. 9026, 1999 WL 20895, at *4 (S.D.N.Y. Jan. 19, 1999) (quoting *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 272 (2d Cir. 1992)).

[52] *See Long v. City of New York*, No. 09 Civ. 699, 2010 U.S. Dist. LEXIS 81020, at *5 (S.D.N.Y. Aug. 6, 2010) ("Finally, plaintiff's counsel is not entitled to fees and expenses for work done in preparing and filing this motion. The Rule 68 judgment limited recoverable fees and expenses to those incurred prior to the date of the offer.").

much less time. Therefore, I will award plaintiff an additional $5,250.00 for preparing the fee application, which corresponds to fifteen attorney hours.

## V. CONCLUSION

For the foregoing reasons, plaintiff is awarded $25,328.06 in attorneys' fees ($20,078.06 + $5,250.00) and $350 in costs, for a combined award of $25,678.06. The Clerk of the Court is directed to close plaintiff's motion for attorneys' fees and costs (Docket Entry # 13) and this case.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        March 14, 2012

- **Appearances** -

**For Plaintiff:**

Ilissa R. Brownstein, Esq.
22 Cortlandt Street,16th Floor
New York, NY 10007
(516) 286-5442

**For Defendant:**

Joseph A. Marutollo
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-1300